Argued February 13, decided February 25, 1913.

**PORTLAND FLOOR CO. *v.* SPAULDING LOGGING CO.**[*]

(130 Pac. 52.)

**Mechanics' Liens—Enforcement of Lien—Evidence.**

1. If nonlienable items are not so intermingled with those which are lienable that the two classes are incapable of segregation by inspection of the notice of the lien itself, the claimant may prove the amount, value, and kind of material furnished by him which went into the construction of the building against which the lien is sought, although all the materials were sent and charged together in one account against the contractor.

**Mechanics' Liens—Enforcement of Lien—Evidence.**

2. While a general account, showing all the transactions between a materialman and the contractor, should be considered in determining whether the claim is for a lump sum covering several buildings indiscriminately, it is not conclusive.

**Mechanics' Liens—Payment—Application.**

3. Where a contractor purchased lumber for three buildings, an account of which was kept in one account on the seller's books, in which payments were entered without discriminating upon what building they were to be applied, the contractor and. materialman could, after the time for filing liens on two of the buildings had expired, agree to apply such payments on such two buildings, in. the absence of any provision in the contract with the owner relative to such matter, especially where it was not shown from what source the contractor derived the funds with which such payments were made.

From Washington:   JAMES U. CAMPBELL, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit by the Portland Hardwood Floor Co., against the Chas. K. Spaulding Logging Co., A. S. Sholes, L. M. Sparks, Jennie B. Sholes, David C. Briggs, Emily E. Briggs, Central Door & Lumber Co., a corporation, Wm. Weitzel, doing business under the firm

---

[*]The question of the right to file a single mechanic's lien against several buildings is treated in a note in 17 L. R. A. 314.    REPORTER.

name of Weitzel Bros., C. A. Broderson and H. J. Goff, J. A. Irmler and W. W. Goff, partners doing business under the firm name of Goff Bros., J. S. Loynes, H. R. Underhill and E. Moore, partners doing business under the firm name of Forest Grove Planing Co., E. D. Timms, H. J. Cress and R. W. Phillips, partners doing business under the firm name of Portland Sanitary Floor Co., I. V. Fuqua, to foreclose a materialman's lien upon a residence erected for the defendant Sholes. He had contracted with the defendant Sparks to erect three dwelling houses by separate contracts. The latter in turn contracted with the plaintiff for the flooring in the largest of the buildings, which for convenience will be called the Sholes residence. He took from the defendant Spaulding Logging Company separate contracts for the mill work to be used in each of the dwellings, and during the progress of the work bought from the company a large amount of other material, which he used in the construction of each of the three buildings. The plaintiff instituted this suit against Sholes as owner, Sparks as original contractor, and sundry lien claimants, including the Spaulding Logging Company, to foreclose its lien on the Sholes residence, but before the hearing all other liens had been settled or disposed of in one way or another, until the only remaining claimants were the plaintiff and the defendant Spaulding Logging Company.

At the hearing the circuit court established the lien of the plaintiff, and dismissed the claim of the logging company, which appeals.   REVERSED.

For appellant there was a brief over the names of *Messrs. McCain, Vinton & Galloway, Mr. John M. Wall* and *Mr. George G. Bingham,* with oral arguments by *Mr. W. T. Vinton* and *Mr. Bingham.*

For respondents, Sholes and Briggs, there was a brief over the names of *Messrs. Bagley & Hare,* with an oral argument by *Mr. W. D. Hare.*

Mr. Justice Burnett delivered the opinion of the court.

The question here to be determined arises between the logging company and the proprietor of the property upon which it claims a lien. It is established without serious dissent that Sparks, the original contractor, called upon the logging company for separate bids for the mill work for each of the three dwellings, and, having received such separate proposals, accepted them separately, so that each party knew in advance what mill work was to be furnished for each of the three dwellings. At the request of the contractor, as the work progressed, the logging company shipped him to be, and which was, used in the three dwellings three car loads of stuff composed of the mill work included in its bids, together with other material consisting of rough lumber, flooring, and the like. What are known in the case as the two small dwellings were finished before the Sholes residence was completed. The logging company had kept an account on its books, wherein were entered all the items of lumber and mill work furnished him in any way. Upon this account Sparks had made some payments, without designating upon what building they were to be applied, and the logging company had credited them in this account. The time within which the logging company could have filed a lien upon the two small dwellings had expired; and, as the period for filing a lien upon the Sholes residence was about to lapse, an agent of the company went to Washington County for the purpose of adjusting the balance due from Sparks for all the material furnished. With the acquiescence of Sparks the agent applied the payments mentioned upon the amount due on the small dwellings, filed a lien on the Sholes residence for the balance remaining unpaid on account of material of all kinds used in that building, and began an action at law to recover the other claims due on the small houses. Sparks made no objection to this application of the payments

already made, and made no defense to the subsequent suit to foreclose the lien.

The proprietor of the real property sought to be charged objects to the lien of the Spaulding Logging Company on two grounds: First, that it is a lump charge which includes materials furnished for all three of the houses; and, second, that Sparks and the logging company had no right to apply all the payments made on the open account by the former to the amounts due on the two small dwellings, and thus to allow the claimant to look solely to the Sholes residence by virtue of its lien for the amount due on that building.

1, 2. We take it that so long as nonlienable items are not so intermingled with those which are lienable that the two classes are incapable of segregation by inspection of the notice of the lien itself, the claimant is at liberty to prove the amount, value, and the kind of material furnished by him which went into the construction of each house. This he may do although the materials were sent and charged together in one account against the contractor. It is true that if nothing else is shown, a general account showing all the transactions between the materialman and the contractor would be a circumstance to be considered in determining whether the claim was for a lump sum covering several buildings indiscriminately, but it is not conclusive, and the contrary may be shown. This we think the claimant has accomplished in this case by a proper preponderance of the testimony. It is not essential that each piece of lumber shall be marked and designated for each particular house. Suppose, for illustration, that each of the small houses required 100 pieces 2x4 16 feet long, and the residence should require 200 pieces of that description. It would not be necessary to send 200 marked pieces of that dimension in a separate car to the large dwelling, and 100 each in two other separate cars to the small dwellings. In

good reason, where the material is of the same kind, it may be shown by other testimony what actually went into the construction of the building, although they were sent to the contractor in one lot.

3. A book account is primarily indicative of financial transactions between a debtor and creditor, and is not intended to illustrate relations between the property owner and the materialman between whom no agreement exists. Sparks was a debtor to the logging company for the materials furnished for each of the two small houses, and in analogy to the principle that a debtor can pay one creditor in full and not pay another at all, he could liquidate his indebtedness to his creditors on the two small houses in full and refuse to pay a creditor on the large house. This can make no difference in principle as between Sholes and the logging company, because the former was not personally liable to pay for the material furnished. In other words, the relation of debtor and creditor did not exist between the proprietor and the materialman. As between them, each house was a separate transaction, and liable under any lien upon it only for the amount of material going into its construction, without reference to other buildings. The proprietor's only interest as against the logging company was that each house be charged only with what material entered into its construction. He could not interfere with the right of Sparks to pay what creditor he chose or apply the payments when and where he pleased. If he desired to control that matter he should have made it the subject of contract with Sparks in the beginning. The Spaulding Company could not make a lump lien on all three houses when they were contracted separately, neither could Sholes have any election as to how Sparks should apply a lump payment on the indebtedness of the latter, especially when it does not appear in the pleadings from whence Sparks derived the funds with which to pay.

For these reasons the decree of the circuit court dismissing the claim of the Spaulding Logging Company will be reversed, and one entered here establishing and foreclosing that lien as prayed for in its answer.

REVERSED.